IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMES M. E., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    Case No. 20-cv-00516-SH |
| | ) |
| KILOLO KIJAKAZI,[1] Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff James M. E. requests judicial review of the decision of the Commissioner of Social Security ("Commissioner") denying his claims for disability benefits under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-434, 1381-1383f. In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge. For the reasons explained below, the Court affirms the Commissioner's decision denying benefits.

**I.    Disability Determination and Standard of Review**

Under the Act, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A); *see also id.* § 1382c(a)(3)(A) (regarding disabled individuals). The impairment(s) must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of

---

[1] Effective July 9, 2021, pursuant to Fed. R. Civ. P. 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

substantial gainful work which exists in the national economy . . . ." *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. §§ 404.1520, 416.920. "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). Under the five-step process, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. pt. 404, subpt. P, app. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do his past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id.* §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The

Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II. Background and Procedural History

Plaintiff applied for Title II and Title XVI benefits, with a protective filing date of November 8, 2018. (R. 15, 230-36.) Plaintiff alleges that he has been unable to work since February 24, 2018, due to congestive heart failure, chronic obstructive pulmonary disease ("COPD"), diabetes, an aureus bacterial infection, sepsis, hypertension, hyperlipidemia, coronary arteriosclerosis with stent placement, and mild ischemic cardiomyopathy with an ejection fraction of 45-50%. (R. 230, 232, 274.) Plaintiff was 49 years old on the date of the ALJ's decision. (R. 28, 230, 232.) He has a high school education and past relevant work as a nurse aide and medication technician. (R. 59-61, 275.)

Plaintiff's claims for benefits were denied initially and on reconsideration, and he requested a hearing. (R. 69-142, 170-71.) ALJ Deidre O. Dexter conducted an administrative hearing and issued a decision on March 20, 2020, finding Plaintiff not disabled. (R. 15-28, 35-68.) The Appeals Council denied review on August 7, 2020 (R. 1-6), rendering the Commissioner's decision final. 20 C.F.R. §§ 404.981, 416.1481. Plaintiff timely filed this appeal on October 9, 2020 (ECF No. 2), within 65 days of that order. *See* 20 C.F.R. § 422.210(c).

### III. The ALJ's Decision

In her decision, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of February 24, 2018. (R. 17.) At step two, the ALJ found Plaintiff had the severe impairments of chronic heart failure, ischemic cardiomyopathy, COPD, diabetes mellitus with peripheral neuropathy, hypertension, and amputation of left second toe. (R. 17-19.) At step three, the ALJ found Plaintiff's impairments did not meet or equal a listed impairment. (R. 19-20.)

The ALJ then determined Plaintiff had the RFC to perform a limited range of sedentary work as defined in 20 C.F.R. §§404.1567(a) and 416.967(a), with the following non-exertional limitations:

> He is able to occasionally climb ramps or stairs, balance, stoop, kneel, crouch or crawl.  The claimant's job should not involve climbing ladders, ropes or scaffolds or work performed near unprotected heights or hazardous moving mechanical parts.  His exposure to dust, odors, fumes or pulmonary irritants should be no more than would be found in a routine office setting.  Further, his job should not involve work performed in extreme heat, extreme cold, humidity, or wetness.

(R. 20.) The ALJ provided a summary of the evidence that went into this finding. (R. 20-26.)

At step four, the ALJ concluded that Plaintiff could not return to his past relevant work. (R. 26.) At step five, however, based on the testimony of a vocational expert ("VE"), the ALJ concluded that Plaintiff could perform other occupations existing in significant numbers in the national economy, including addresser, charge account clerk, and callout operator. (R. 27.) The ALJ thus found Plaintiff was not disabled. (R. 28.)

### IV. Issue

Plaintiff asserts the ALJ erred by failing to properly evaluate and account for his subjective symptoms, including pain. (ECF No. 11 at 6.)

4

V.  **Analysis**

Plaintiff specifically asserts that the ALJ's consistency analysis was deficient because the ALJ: (i) improperly relied on boilerplate language (ECF No. 11 at 8-10, 14; ECF No. 13 at 1-2); (ii) did not consider the relevant factors in and Social Security Ruling ("SSR") 16-3p and related regulations (ECF No. 11 at 7-9, 11, 15); (iii) failed to account for his pain (*id*. at 9, 12-13); and (iv) improperly rejected his need to frequently miss work, elevate his legs, and take unscheduled breaks (*id*. at 13-15).

The ALJ is required to consider Plaintiff's subjective complaints, or symptoms,[2] in determining the RFC. 20 C.F.R. §§ 404.1529(a) & (d)(4), 416.929(a) & (d)(4). When evaluating a claimant's symptoms, the Commissioner uses at two-step process.[3] SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017); *see also generally* 20 C.F.R. §§404.1529, 416.929 (regulations governing the evaluation of symptoms). First, the medical signs or laboratory findings must show the existence of medical impairment(s) that result from anatomical, physiological, or psychological abnormalities and could reasonably be expected to produce the symptoms alleged. SSR 16-3p at *3. Second, once such impairments are established, the ALJ must then evaluate the intensity and persistence of the symptoms, so she can determine how the symptoms limit the claimant's capacity to

---

[2] *See* 20 C.F.R. §§ 404.1502(i), 416.902(n) (defining "symptoms" as the claimant's "own description of [his] physical or mental impairment").

[3] Tenth Circuit precedent has characterized this as a three-step process: (1) whether the claimant established a symptom-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some symptom of the sort alleged (a "loose nexus"); and (3) if so, whether, considering all objective and subjective evidence, the claimant's symptom was in fact disabling. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)). The two-step analysis under SSR 16-3p comports with this prior, three-step process under *Luna*. *Paulek v. Colvin*, 662 F. App'x 588, 593-94 (10th Cir. 2016) (unpublished). But, the term "credibility" is no longer used. SSR 16-3p at *2. For purposes of this opinion, the Court will refer to the process as a "consistency analysis."

work. *Id.* at *4.

Factors the ALJ should consider include: (i) the claimant's daily activities; (ii) the location, duration, frequency, and intensity of symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of medications; (v) treatment aside from medication; (vi) any other measures the claimant has used to relieve the symptoms; and (vii) other factors concerning functional limitations and restrictions due to the symptoms. *Id.* at *7-8. The ALJ's symptom findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Cowan v. Astrue,* 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995)). The ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p at *10. Because consistency findings are "peculiarly the province of the finder of fact," reviewing courts should "not upset such determinations when supported by substantial evidence." *Cowan,* 552 F.3d at 1190 (quoting *Kepler,* 683 F.3d at 391).

The Court finds no error in the ALJ's consistency analysis. In her written decision, the ALJ summarized Plaintiff's administrative hearing testimony. (R. 20-21.) As relevant to this appeal, the ALJ specifically acknowledged Plaintiff's testimony that he has difficulty standing due to neuropathy, numbness, swelling, and sores on his feet; had a toe amputated; elevates his feet approximately 70% of the day to alleviate his symptoms; experiences pain in his lower extremities five days out of seven; and experiences breathing difficulties with exertion or exposure to heat, cold, chemicals, perfume, bug sprays,

6

aerosols, pollen, and grass. (*Id.*) The ALJ then found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms;[4] however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ."  (R. 21.) In reaching this conclusion, the ALJ discussed several inconsistencies between Plaintiff's subjective complaints and the evidence of record, including: (i) the effectiveness of treatment for Plaintiff's pneumonia and sepsis (R. 21); (ii) Plaintiff's improved ventricular ejection fraction after a heart catherization and placement of a stent in April 2018 (R. 21-22, 25); (iii) an August 2018 stress test showing normal left ventricle systolic function, a perfusion defect consistent with Plaintiff's prior inferior wall infarction, no significant ischemia, and no new coronary artery disease (R. 22, 24); (iv) the normal physical consultative examination in January 2019 (R. 22); (v) a September 2019 chest x-ray showing low lung volumes and a right hemidiaphragm elevation but no acute cardiopulmonary disease (R. 23); (vi) a September 2019 right foot x-ray showing no evidence of osteomyelitis of the great toe, no osseous erosive changes,

---

[4] Plaintiff asserts that this boilerplate finding is insufficient to show the ALJ considered whether Plaintiff had a "loose nexus" between his proven impairments and his alleged symptoms as required by *Luna*. (ECF No. 11 at 9; ECF No. 13 at 1.) The Court disagrees. Step one of the current process combines steps one and two of the *Luna* analysis. *Compare* SSR 16-3p at *2 ("First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain.") *with Luna,* 834 F.2d at 163 ("If a pain-producing impairment is demonstrated by objective medical evidence, the [ALJ] must consider the relationship between the impairment and the pain alleged.) *and id.* at 164 ("the statute requires only a loose nexus between the proven impairment and the pain alleged. Accordingly, if an impairment is reasonably expected to produce *some* pain, allegations of *disabling* pain emanating from that impairment are sufficiently consistent to require consideration of all relevant evidence."). The ALJ's finding, combined with her subsequent analysis of both the subjective and objective evidence, shows she considered, and agreed, that Plaintiff's medically determinable impairments could reasonably produce his alleged symptoms.

and well maintained joint spaces (*id.*); (vii) treatment notes describing Plaintiff's angina as stable (R. 23, 25); (viii) Plaintiff's healed left second toe amputation and the normal left lower extremity vascular examination in September 2019 (R. 23-24); and (ix) a November 2019 treatment note showing a normal cardiovascular examination, a healing right great toe wound, no lower extremity edema, and expiratory wheezing bilaterally but no "crackles" (R. 23-25).

Plaintiff argues that the ALJ discounted his symptoms using boilerplate language without explaining her reasons for finding Plaintiff's symptoms not entirely consistent with the evidence of record. Although the use of boilerplate language is disfavored, it "is problematic only when it appears 'in the absence of a more thorough analysis.'" *Keyes-Zachary,* 695 F.3d at 1170 (quoting *Hardman v. Barnhart,* 362 F.3d 676, 679 (10th Cir. 2004)). As set forth above, the ALJ included boilerplate language at the outset of her consistency analysis (R. 21), but then proceeded to explain why she concluded that Plaintiff's functional limitations were not as severe as he alleged by referring to specific evidence in the record. The ALJ thus linked her consistency findings to the evidence and provided clear and specific reasons for her determination, in compliance with the directives of the Tenth Circuit and SSR 16-3p.

Plaintiff also asserts that the ALJ failed to consider the required symptom factors, particularly his continued attempts to seek treatment for his impairments. As set forth above, the ALJ provided numerous reasons, supported by the record, for finding Plaintiff's symptoms were not as severe or functionally limiting as alleged. The ALJ's thorough analysis reflects that she considered the location, duration, frequency, and intensity of Plaintiff's symptoms (R. 20-21); precipitating and aggravating factors (R. 21, 23-24); the type and effectiveness of his medications (R. 23-24); and his treatment aside

from medication (R. 22-25). *See* 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3); *see also* SSR 16-3p at *7-8. As it relates to Plaintiff's specific complaint—his attempts to seek treatment—the ALJ thoroughly discussed Plaintiff's treatments, including his lengthy inpatient hospitalization in early 2018 (R. 21-22 (citing Exhibit 1F)), outpatient treatment at Oklahoma Heart Institute (R. 22-24 (citing Exhibit 14F)), outpatient treatment at Advanced Podiatry of Bartlesville (R. 23-24 (citing Exhibits 16F, 18F, 19F)), and left toe amputation (R. 23 (citing Exhibit 19F)). In any event, a "formalistic factor-by-factor recitation of the evidence" is not required, "[s]o long as the ALJ sets forth the specific evidence [she] relies on in evaluating the claimant's" symptoms. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

Plaintiff also asserts that the ALJ failed to account for his pain. "Pain, even if not disabling, is still a nonexertional impairment to be taken into consideration, unless there is substantial evidence for the ALJ to find that the claimant's pain is insignificant." *Thompson v. Sullivan*, 987 F.2d 1482, 1490-91 (10th Cir. 1993). As set forth above, the ALJ discussed Plaintiff's complaints of pain related to his cardiac problems, neuropathy, sores on his feet, and left second toe amputation as well as his claims of non-exertional limitations based on pain. (R. 20-25.) Although the record reflects Plaintiff's diabetic neuropathy, foot wounds, toe amputation, and chest pain, there is no evidence of severely restricted range of motion or mobility due to pain or a pain-producing impairment, and there are no medical opinions identifying pain-related functional limitations. As the ALJ correctly noted, Plaintiff's angina was stable after treatment (R. 971, 982, 1277), his left second toe amputation healed well (R. 961, 1097, 1165), his right great toe wound was healing by November 2019 (R. 954), and the consultative examination was normal

9

(R. 667-72). Moreover, the ALJ explicitly accounted for Plaintiff's neuropathy, foot wounds, toe amputation, and cardiac problems in assessing the RFC, as discussed below.

Finally, Plaintiff asserts that the ALJ should have found more limitations for frequent absences from work, leg elevation at will, and unscheduled breaks, pointing to evidence of his inpatient hospitalizations, outpatient treatment, left second toe amputation, and various abnormal examination findings related to his lower extremities. However, as set forth above, the ALJ cited many of these records in her decision and thoroughly analyzed the work-related functional limitations of Plaintiff's cardiac, pulmonary, and lower extremity impairments. The ALJ identified chronic heart failure, ischemic cardiomyopathy, COPD, diabetes with peripheral neuropathy, and left second toe amputation as severe impairments at step two; discussed Plaintiff's testimony; and summarized the findings of his treating, consultative, and reviewing physicians as part of the RFC analysis. (R. 17, 20-25.) This is sufficient consideration of the evidence identified by Plaintiff. *See Clifton v. Chater,* 79 F.3d 1007, 1009-10 (10th Cir. 1996) ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence.") Moreover, in discussing the opinion evidence, the ALJ found unpersuasive the state agency physicians' opinion that Plaintiff could perform light work without postural limitations and specifically explained that she <u>further</u> limited Plaintiff to sedentary work <u>with</u> postural limitations due to his cardiac and pulmonary problems (including placement of a coronary stent and diminished lung function) and his diabetic neuropathy with occurrences of wounds and amputation of the left second toe. (R. 25.) The ALJ further explained that Plaintiff's history of cardiac and pulmonary problems supported the environmental restrictions she included in the RFC. (R. 26.) Thus, the ALJ considered all the relevant evidence related to Plaintiff's impairments and

explained how such evidence supported the RFC assessment. *See Barnett v. Apfel,* 231 F.3d 687, 689 (10th Cir. 2000) ("The ALJ is charged with carefully considering all the relevant evidence and linking [her] findings to specific evidence."). Plaintiff fails to point to any evidence other than his own assertions to support the additional limitations he claims. *See Hamilton v. Sec'y of Health & Hum. Servs.,* 961 F.2d 1495, 1499 (10th Cir. 1992) ("[a claimant's] testimony alone cannot establish a nonexertional impairment"). The longitudinal evidence in the record does not reflect further limitations; there is no medical source opinion in the record that identifies limitations greater than those included in the RFC assessment; and the ALJ clearly considered the evidence of record. As set forth above, the ALJ also reasonably explained "the link between the evidence" and her consistency determination. *Kepler,* 68 F.3d at 391. Nothing more was required. Because Plaintiff points to no evidence the ALJ overlooked, his arguments amount to a request that the Court reweigh the evidence, which it cannot do. *See Hackett v. Barnhart,* 395 F.3d 1168, 1172 (10th Cir. 2005) ("We consider whether the ALJ followed the 'specific rules of law that must be followed in weighing particular types of evidence in disability cases,' but we will not reweigh the evidence or substitute our judgment for the Commissioner's." (citations omitted)).

## VI.  Conclusion

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **AFFIRMED.**

**SO ORDERED** this 21st day of March, 2022.

_____
SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT